elements, . . . has yet proved prejudice from the delay.") See also Ansin v. River Oaks Furniture, 105 F.3d 745, 757 (1st Cir. 1997) (citing Srebnick v. Lo-Law transit Management, 29 Mass. App. 45 (1990) for the proposition that "As long as there is no statute of limitations problem, unreasonable delay in pressing a legal claim does not, as a matter of substantive law, constitute laches."); Baird v. Bellotti, 724 F.2d 1032, 1033 (1st Cir. 1984 (endorsing the statement that "the concept of laches is that a party is to be *forgiven* his unreasonable delay, provided it has had no prejudicial consequences.")(emphasis added).

Whether a period of delay is unreasonable is to be judged in the particular circumstances. "Each case must be considered on its own facts in determining the reasonableness of the delay; laches is an equitable, hence flexible, doctrine, and no length of time is considered *per se* unreasonable." Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 245 (8th Cir. 1987).[23]

Concerning prejudice, it has been observed that:

> "Courts have recognized two chief forms of prejudice in the laches context -- evidentiary and expectations-based. Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died. . . . A defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."

---

[23] See also Veltri Building Services v. 32b-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004)(inquiry concerns "lack of diligence *under the circumstances*")(emphasis added); Martin v. Consultants & Admrs., 966 F.2d 1078, 1100 (7th Cir. 1992)(inquiry is whether delay is "unwarranted in the circumstances").

Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001)(citations omitted).[24]

Regardless of the specific type of prejudice claimed, the proponent must prove that it was caused by the plaintiff's delay in bringing the suit. See Murphy v. Timberlane Regional School District, 973 F.2d 13, 17 (1st Cir. 1992)("The laches doctrine may be invoked only where the prejudice to the defendant flows from the plaintiff's delay.")

Inasmuch as McLain has not exceeded any applicable statute of limitations, the City has the burden of proving both elements of this affirmative defense. See, e.g., K-Mart Corp. v. Oriental Plaza, Inc., supra, 875 F.2d at 911 ("When a plaintiff brings suit within the limitation period, a defendant claiming laches has the burden of proving both unreasonableness of the delay and the occurrence of prejudice."); Fleet National Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51, 61 (1st Cir. 2004) ("if a plaintiff files a complaint within the

---

[24] See also Albemarle Paper Co. v. Moody, 422 U.S. 405, 440 (Marshall, concur) (writing that "the usual ground" for invoking laches is that "the passage of time has put beyond reach evidence or testimony necessary to his case"); Trustees for Alaska Laborers-Construction Industry Health & Sec., 812 F.2d 512, 518 (9th Cir. 1987) ("Traditionally, laches is invoked when witnesses have died or evidence has gone stale."); Murphy, supra, 22 F3d at 1189 (courts look to whether the unreasonable delay in bringing suit has hindered a party's "ability to present its case as a result of the unavailability or failed memories of key witnesses"); Miller v. City of Indianapolis, supra, 281 F.3d at 65d3- (employer that was defendant in employment discrimination suit met its burden of showing prejudice where, of the actors who had allegedly committed the discriminatory acts, two were deceased and others had retired); Winchester v. Pension Committee of Michael Reese Health Plan, etc., 942 F.2d 1190, 1194 (7th Cir. 1991) ("Prejudice in laches arises from the loss of evidence which diminishes the defendant's chance of success at trial."); Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co., 839 F.2d 1147, 1151 (6th Cir. 1988)("defendant suffered prejudice in the form of lost witnesses and documentary evidence.").

analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant.")[25]

That burden has been characterized as "heavy"[26] and one that must be supported by "substantial evidence." Murphy v. Timberlane Regional School District, 22 F.3d 1186, 1189 (1st Cir. 1994)(citations omitted).[27]

Even where its elements might otherwise be satisfied, it has also been suggested that the doctrine is simply inappropriate when applying it would conflict with the policy considerations that informed the statute on which the claim is based. See, e.g., Murphy v. Timberlane Regional School District, 973 F.2d 13, 16 (1st Cir. 1992) ("We have been unable to find any cases applying the laches doctrine to a claim brought under the Act, indicating that perhaps the doctrine should be applied sparingly to facilitate Congress' policy concerning the education of children with disabilities."); County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 245 (1985) (observing, in case alleging that a 1795

---

[25] Gonzalez-Gonzalez v. United States, 257 F.3d 31, 38 (1st Cir. 2001) ("Laches is an affirmative defense. . . . Accordingly, the burden of proving it rests with its proponent."); Veltri, supra, 393 F.3d at 326 ("A party asserting the equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay."); Mitchell v. Massachusetts Department of Corrections, 190 F. Supp. 2d 204, 215 (D. Mass. 2002)("Because it is an affirmative defense, 'a defendant claiming laches has the burden of proving both unreasonableness of the delay and the occurrence of prejudice.'").

[26] See Ansin v. River Oaks Furniture, 105 F.3d 745, 757 (1st Cir. 1997) ("If the statute of limitations has not run . . . the defendant bears a heavy burden of demonstrating the unreasonableness of delay and the occurrence of prejudice.").

[27] See also Compare Smith v. Caterpillar, Inc., 338 F.3d 730, 732 (7th Cir. 2003)("[A]t minimum we require a showing of prejudice that is material, meaning it affects the substantial rights of the defendant to such a degree that it justifies the equitable relief of barring the plaintiff's claims").

conveyance of land to New York violated the Indian Trade and Intercourse Act, that "the application of laches would appear to be inconsistent with established federal policy."); Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co., 839 F.2d 1147, 1158 (6th Cir. 1988)("Courts may not invoke the doctrine of laches where to do so would be inconsistent with national policies and priorities established by Congress."); Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367 (1977) (observing, in regard to federal laws that do not contain their own statute of limitations, that "State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute.")

McLain submits first that laches is inapplicable to his USERRA claim, because it conflicts with the express and implied policies that inform that act. Not only did Congress not set a limitations period for USERRA claims, but it expressly *prohibited* the borrowing of state periods.[28] It seems clear that Congress wants USERRA claims to be measured on their merits, not on the basis of arbitrary time lines.

Even assuming arguendo that the policies that inform the laches doctrine could be reconciled with the policy considerations inherent in the text of USERRA, it nonetheless would be inconsistent with those policies to apply it here, to a claim filed barely three years after its arguable accrual.

The summary judgment record shows that the City can prove neither required element of the laches defense. First, there was no unreasonable delay; McLain filed suit less than three years from when he was told by a city

---

[28] See 38 USCS § 4323 (i) Inapplicability of State statute of limitations ["No State statute of limitations shall apply to any proceeding under this chapter"].

personnel official that he was not going to be hired because he was not available to start at the police academy on October 1. Compare Petry v. Delmara Power & Light Co., 631 F. Supp. 1532, 1534 (D. Del.1986) (four-year delay in bringing a claim under the VRRA did not constitute laches). And during that interim period, his time was substantially occupied by other pursuits: he was in the military, and stationed in Washington state, for the first three months of this period; upon his return to Massachusetts in December 2001 he had to both transition from the military to civilian life and to find employment; and he thereafter worked long hours for his employer, the MBTA police. The fact that during this transition period he did not immediately go out and hire an attorney to advise him and presumably bring suit is not "unreasonable" on these facts; put differently, the City, which bears the burden of convincing the Court on this issue, cannot demonstrate as a matter of law that the time that passed between learning of his non-selection and filing this suit was unreasonable.

Regardless of whether the time between McLain learned of his non-selection and his bringing suit qualifies as "unreasonable delay," laches still is not present because no cognizable prejudice to the City resulted from McLain bringing suit three years after his non-selection. There cannot be any "evidentiary" prejudice because the facts concerning why the City decided not to select McLain are uncontroverted; in any event, the person who presumably decided which candidates to select for police employment, former mayor Dorothy Kelley Gay, is alive and not otherwise "unavailable" in any sense.

There is no basis to say that the passing of time has impaired the City's ability to put on its case.

There is no "relational" prejudice either. The City simply cannot show that it "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." The relevant state of affairs at the time McLain filed suit simply was no different than it would have been if he had filed suit the day he returned to Massachusetts. Particularly relevant is the fact that as of the time McLain filed this action, the City had not hired any additional police officers since the group sent to the police academy on October 1, 2001. Thus, its unawareness of McLain's challenge to his non-selection could not have affected any subsequent hiring decisions. See, e.g., Novak v. Mackintosh, 937 F. Supp. 873, 880 (D.S.D. 1996) ("Although the delay is inconvenient, Defendants presented no evidence that they changed their position in any way that would not have occurred" if case had been brought sooner).

In sum, there are no undisputed facts that would support the discretionary application of the laches doctrine to the instant claim. The City has sustained neither its Rule 56 burden [of showing there is no genuine dispute over any of the facts material to the laches inquiry] nor its substantive burden of showing unreasonable delay and prejudice causally attributable to that delay.

### F. McLain Is Entitled To A Make-Whole Remedy For City's USERRA Breach.

#### 1. Remedies Available Under USERRA.

If, as McLain maintains, the City breached USERRA by declining to hire him due to his unavailability, he would be entitled to a remedy that restored him, to the fullest extent possible, to where he would be today if his rights had not been violated. McLain submits that the facts that relate to remedy are not in genuine dispute and that accordingly the Court can issue a "make-whole" remedial order under the umbrella of this Rule 56 motion.[29]

Congress has broadly provided for remedies in the event rights under USERRA are not honored. 38 USCS § 4323(d), entitled "Remedies", provides in relevant part[30] that:

> (1) In any action under this section, the court may award relief as follows:
>
> > (A) The court may require the employer to comply with the provisions of this chapter;

---

[29] It may be that only liability, and not the remedial issues that follow if McLain is successful on the merits, are actually resolvable on summary judgment. Compare Rogers v. City of San Antonio, supra, 392 F.3d at 761 (explaining that "[t]he parties agreed to bifurcate the liability and damages issues and filed cross-motions for partial summary judgment on the question of whether the City violated USERRA and is therefore liable to the plaintiffs. They also filed cross-motions on whether the plaintiffs' claims were barred or curtailed by a statute of limitations, laches or estoppel."); Beattie, supra 758 F. Supp. at 37 n. 8 (VRRA failure-to-hire case in which court on summary judgment resolves liability only)

[30] USERRA's remedial provisions apply to public employers in the same manner as private employers. See 38 USCS § 4323(d)(3) ("A State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section.").

> (B) The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter;
>
> (C) The court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.
>
> (2)   (A) Any compensation awarded under subparagraph (B) or (C) of paragraph (1) shall be in addition to, and shall not diminish, any of the other rights and benefits provided for under this chapter.
> . . .

At paragraph (e), entitled "Equity powers" Congress provided that "The court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter."

The task of determining the components of, and actually calculating the amount of, wages and benefits lost due to a discriminatory failure to hire is conceptually no different under USERRA than any other employment discrimination statute, including USERRA's direct predecessors. Like those comparable remedial schemes, the goal is to make the plaintiff "whole", that is, to place him as nearly as possible where he would have been had the discriminatory conduct not occurred. See, e.g., Duarte v. Agilent Technologies, Inc., 176 L.R.R.M. 3226 (D. Co. 2005) (district court calculates back pay in USERRA-based wrongful termination suit by determining what the plaintiff would have earned in the position and subtracting his interim earnings, a severance benefit and unemployment benefits he in fact received after termination); Novack v. Mackintosh, supra, 937 F. Supp. at 883 ("damages under the Veterans Reemployment Rights Act are calculated as back wages and *other benefits* which the veteran would have received had she or he been

employed, less actual earnings received from other employers during the same period")(emphasis added); Bury v. General Motors Corp., 113 L.R.R.M. 3036 (N.D.Oh. 1982) ("A veteran who has suffered a loss by the illegal conduct of his employer is entitled to be made whole. . . . A veteran's lost wages equal the difference between what he would have earned but for his employer's conduct and what he actually earned.").[31]

Since USERRA provides for lost wages and benefits, making the non-hired applicant "whole" financially clearly requires more than just adding up the *base* pay he has lost and subtracting what he has made in base pay in the same period from other endeavors. Where the position in question is one in which the incumbent would reasonably be expected to receive *extra* compensation, such as overtime compensation, damage awards under remedial employment statutes may include amounts designed to make the plaintiff whole for those losses as well. See, e.g., Ricco v. Potter, 377 F.3d 599, 605 (6th Cir. 2004)("back-pay awards often include payment for overtime work that an employee would have performed but for her employer's violation of employment

---

[31] Compare Fuhr v. School District of Hazel Park, 364 F.3d 753, 760-61 (6th Cir. 2004) ("[T]he central purpose of the state and federal anti-discrimination laws . . . is 'to make the person whole for injuries suffered on account of unlawful employment discrimination,' and the general rule is therefore that 'the injured party is to be placed, as near as may be, in the situation she would have occupied if the wrong had not been committed'.")(quoting from Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975); Ingram v. Missouri Pac. R.R., 897 F.2d 1450, 1457 (8th Cir. 1990) ("Title VII relief is designed to be "make whole" relief, that is, it should put the plaintiff in as good a position as if the discrimination never occurred"); Washington v. Davis, 13 Am. Disabilities Cas. (BNA) 1052 (E.D. La. 2002)("Federal anti-discrimination statutes, including the [ADA] . . . provide for equitable relief. The intent of these remedies is to return the plaintiff to the status she would have enjoyed but for the discriminatory acts of the defendant. In other words, the relief should be designed to make the plaintiff "whole.").

laws."); United States v. City of Warren, 138 F.3d 1083, 1097 (6th Cir. 1998)("lost overtime is a well-established part of a back pay award under Title VII"); EEOC v. Kentucky State Police Department, 80 F.3d a1086, 1100 (6th Cir.)(upholding an award of lost overtime payments granted to prevailing plaintiffs in an ADEA case), cert. denied, 519 U.S. 963 (1996); Kossman v. Calumet County, 849 F.2d 1027, 1033-34 (7th Cir 1988) (affirming damages award to ADEA plaintiff that included amount for lost overtime opportunities)[32]; Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1562 (11th Cir. 1986)(concluding in Title VII case that "back pay awards . . . should not have been limited to 'straight salary'; interest, overtime, shift differentials, and fringe benefits such as vacation and sick pay should also have been considered in fashioning award."); James v. AMTRAK, 2005 U.S. Dist. LEXIS 5401 (S.D.N.Y. 2005)("There is no doubt that overtime compensation is an allowable component of a back-pay award."); Walker v. Dalton, 89 F. Supp. 2d 20, 26 (D.D.C. 2000)("It is appropriate for a district court to consider overtime in calculating a back-pay award."); Police Commissioner of Boston v. Gows, 429 Mass. 14, 19 (1999) (affirming order that police department compensate plaintiff for financial loses, including "the overtime and detail pay which she lost" during time she was unlawfully placed on leave of absence); Kraft v. Boston Police Department, 410 Mass. 155 (1991) (affirming superior court

---

[32] In that case, the district court had calculated the amount of lost overtime based on evidence as to the average hours of overtime worked by all employees in the employment category in question. The appellate court rejected the employer's contention that by doing so the District Court had engaged in undue speculation. It wrote in this respect that " Arguing that [the plaintiffs] may have decided to work little or no overtime, or may have been injured, thus eliminating the ability to work any overtime, is too speculative to impugn the district court's reasonable attempt to calculate lost overtime wages.")

judgment in disability discrimination case under M.G.L. c. 151B that had included award of damages to police officer for "lost wages, benefits, *overtime and paid detail[s]*")(emphasis added); Connolly v. Suffolk County Sheriff's Department, 62 Mass. App. Ct. 187, 198 (2004)(writing, in case arising under c. 151B, that discriminatee would be entitled to damages for lost overtime if he could "demonstrate with reasonable certainty that [he] would have received some overtime shifts and attendant wages had it not been for the" employer's discriminatory conduct).[33]

---

[33]   The City may assert that lost overtime and paid detail opportunities are not recoverable in USERRA actions arising in Massachusetts, and may rely in this respect on a ruling of the Massachusetts Appeals Court in White v. City of Boston, 57 Mass. App. Ct. 356 (2003). Any such contention should be rejected as without merit.

That case involved a statute that authorized the return to active employment of public employees who had previously been granted disability retirements. In that case, there had been a delay between the time the retiree, a police officer, had been medically cleared to return to work and when his employer actually returned him to active duty, and the retiree brought an action to recover his economic losses attributable to that delay. The court ruled he was only entitled to the base salary he would have been owed in the position, and not any amounts for overtime or paid details that he might have worked if he had been promptly restored to duty. Id. at 357 ("the amount owed a public employee under G. L. c. 32, §8, when there is a time gap between entitlement to reinstatement and the resumption of employment, is base compensation and does not include overtime and detail pay factors."). In so doing, it relied on an earlier Appeals Court decision, Selectmen of Framingham v. Municipal Ct. of Boston, 11 Mass. App. Ct. 659 (1981), which held that when a civil service employee is reinstated under the provisions of the state civil service law, chapter 31, "without loss of compensation," "whether by decision of the civil service commission or of a reviewing court, the government employer must pay the compensation fixed by statute or ordinance (base pay) but not amounts for which the employee is required to perform extra service or extra activity."

Of course, this case does not involve either the return to work of retired public employee or of a civil servant deemed to have been discharged in breach of the state civil service law, so it is hard to see how those rulings could affect at all, let alone limit, this court's remedial authority in a federal USERRA

One Massachusetts adjudicatory body that has often been called on to issue "make whole" remedies, including specifically in the law enforcement context, is the Massachusetts Labor Relations Commission. That agency has long held that "unlawfully discharged employees are entitled to be compensated for lost overtime opportunities during the back pay period." Newton School Committee, 8 MLC 1538, 1556 (1981)(aff'd, School Committee of Newton v. Labor Relations Commission, 388 Mass. 557 (1983). That agency has awarded damages to police officers for lost "paid detail" opportunities resulting from violations of the state labor laws by police employers. See, e.g., Town of Falmouth, 25 MLC 24 (1998)(awarding police officers damages for lost earnings from paid details they were not permitted to work).[34]

The inherent uncertainty involved in determining the wages and benefits that a discriminatee like McLain *would* have received, had he been hired and allowed to work as a Somerville police officer, does not bar a supportable claim for damages. See, e.g., Larch v. Mansfield Municipal Electric Department, 272

---

failure-to-hire case. And even if they expressly purported to limit the Court's remedial authority, any such state law rule would be preempted by the supervening federal enactment that is USERRA. See, e.g., Silkwood v. Kerr-Mcgee Corp., 464 U.S. 238, 256 (1984) (federal law will preempt conflicting state remedial scheme when "there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law.").

[34] The result might be different if there was substantial doubt as to whether during the "back pay" period anyone would have worked beyond their normal hours. Contrast, e.g., Curtis v. Robern, Inc., 819 F. Supp. 451, 459 (E.D. Pa. 1993) (denying claim for damages for lost overtime by wrongfully laid-off employee, explaining that "While it is true he earned overtime compensation in prior years, the very predicate of the layoff was a significant slowdown in business. Under these circumstances, we believe that the question of whether Curtis would have earned any overtime is entirely too speculative to impose additional damages for such hypothesized work.")

F.3d 63 ("Mere uncertainty in the award of damages is not a bar to their recovery . . . .").[35] What matters instead is the reasonableness of the proposed method for calculating such losses, and that there is a sufficient evidentiary showing that 1) overtime opportunities would have been available to the plaintiff and 2) the plaintiff would have availed himself of those opportunities. Compare, e.g., NLRB v. Rice Lake Creamery Co., 365 F.2d 888 (D.C. Cir. 1966) (approving NLRB's method of calculating "back pay" of "taking the average number of straight time *and overtime hours* worked by all full-time employees who performed production work during the back pay period and multiplying this average by the appropriate hourly wage rate for each discriminatee"); Chemvet Laboratories, Inc. v. NLRB, 497 F.2d 445 (8th Cir. 1974) (enforcing NLRB back pay order "even though amounts of available overtime [is] uncertain"); Intermountain Rural Electrical Association, 317 N.L.R.B. 588, 591 (1995) (deciding that ALJ had erred in *not* awarding damages for lost overtime; writing that "we reject [the ALJ's] "apparent reliance on speculative testimony about whether employees might have refused overtime more often in the past had the overtime been offered to them.").

   2.   **Specific Remedies: Instatement With Retroactive Effect.**

McLain requests that the Court issue an order requiring the City to hire him forthwith into the position of police officer, with an effective date of August 31, 2001, the date he would have been selected but for his military service

---

[35] As the Massachusetts Labor Relations Commission has observed, such uncertainty is "an inevitable consequence of attempting to determine what would have transpired had other events not intervened." School Committee of Newton, supra, 8 MLC at 1557.

obligation. See, e.g., Wriggelsworth v. Brumbaugh, 129 F. Supp. 2d 1106, 1109 (W.D. Mi. 2001) (reinstatement in USERRA action); Fuhr v. School District of Hazel Park, 364 F.3d 753, 761 (6th Cir. 2004)("victims of discrimination are presumptively entitled to instatement or reinstatement"); United States EEOC v. W&O, Inc., 619 (11th Cir. 2000)("prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay."); Thurman v. Yellow Freight System, 90 F.3d 1160, 1171 (6th Cir. 1996)("Victims of discrimination are presumptively entitled to instatement or reinstatement in the usual case.").

USERRA specifically empowers the court to require the City to comply with its provisions and gives it broad injunctive powers to do what is necessary to "fully vindicate" rights under this act. An order directing the City to offer McLain employment as a police officer is thus presumptively appropriate in a wrongful failure-to-hire case.[36]

The Court should also exercise its broad injunctive authority to order that McLain's date of hire be deemed to be the same as those officers actually selected on August 31, 2001, the date he too would have been selected but for his service-related unavailability. Such an order is necessary to make him "whole," inasmuch as Massachusetts civil service law makes the date that an

---

[36] While McLain does not concede that it would matter, he notes for the Court that he remains "eligible", from a civil service standpoint, for a civil service appointment to the Somerville police department. Indeed, he is near the top of the current eligible list. McLain affid., ¶ 23.

employee receives a "permanent" appointment relevant for various purposes, including determining the order of layoff.[37]

### 3. Back Pay, Including Lost Overtime And Paid Details.

There is no genuine dispute over the basic facts that would enable the Court to determine 1) that McLain has suffered economic loss to date because of the City's failure to hire him on August 31, 2001 and 2) the amount of that loss. He thus requests that the Court order the City to make him whole for all such economic losses, and suggests the following calculations are the appropriate measure of those losses.

The fact evidenced in the record as to which there is no genuine dispute fairly permit the inference that if McLain had been hired on August 31, 2001, and been enrolled in a police academy upon his discharge from active duty, he would have started drawing a paycheck from the City no later than January 2002 and would have continued in the City's employ to this time. If those facts had occurred, there is a basis to conclude that he would have received -- more in total compensation that he in fact has received in that period. That amount is comprised of the difference in the respective levels of annual base pay, as well as the earnings attributable to overtime and paid details that it can safely be assumed that he would have received as a Somerville police officer.

---

[37]   See c. 31, § 33 ("seniority of a civil service employee shall mean his ranking based on length of service . . . . Length of service shall be computed from the first date of full-time employment as a permanent employee, . . .") and c. 31, §39 ("If permanent employees in positions having the same title in a departmental unit are to be separated from such positions because of lack of work or lack of money or abolition of positions, they shall, except as hereinafter provided, be separated from employment according to their seniority in such unit").

In the latter respect, the summary judgment record shows that the officers who were hired on August 31, 2001, each had substantial earnings attributable to overtime and especially paid details, opportunities that McLain *would have been entitled to participate in* had he too been on the force during 2002, 2003 and 2004. And the record leaves no room for doubt that McLain would have *availed* himself of those opportunities: in his other police employment, he has regularly sought out and worked as many overtime opportunities and paid details as he could get. The record shows that he has chosen, in essence, to maximize his income rather than devote his time and energy to other non-work pursuits. He asks that the Court order the City to pay him that amount, with appropriate pre-judgment interest added to the resulting sum.

4. **McLain Is Entitled To Double Damages Because The USERRA Violation Was Willful In The Relevant Sense.**

USERRA is like some of the other federal employment discrimination statutes in that it provides for doubling a discriminatee's damages in the event "the court determines that the employer's failure to comply with [its] provisions . . . was willful." The Supreme Court has instructed that in the employment discrimination context, "a violation is considered willful if 'the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by'" the statute in question. Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 722 (1st Cir. 1994)(quoting from Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985). The First Circuit has explained further that "[w]illfulness . . . requires an element akin to reckless disregard of, or

deliberate indifference to, an employer's [statutory] obligations." Sanchez v. Puerto Rico Oil Co., supra, 37 F.3d at 722. And the Sanchez court favorably recited a formulation by a sister circuit that an employer acts with willfulness when it is "indifferent to the requirements of the governing statute and act[s] in a purposeful, deliberate, or calculated fashion." Id. at 722, citing Benjamin v. United Merchants & Mfrs., Inc., 873 F.2d 41, 44 (2d Cir. 1989).

    McLain submits that there is an adequate basis in the summary judgment record for the Court to conclude that the City's failure to comply with USERRA was willful. The record reflects that its personnel officials knew that McLain was in military service and that his service obligations would prevent him from starting at the police academy on October 1, 2001. There is no evidence that the City's hiring officials took any steps to inform themselves of the City's legal responsibilities toward eligible applicants who were then in the military or its legal right to select McLain notwithstanding his temporary unavailability. It is not as if such information was not readily available; indeed, the very form which accompanied HRD's authorization for it to hire new police officers, the Form 14, expressly indicated that candidates then in the military could be hired notwithstanding their military service. Even if, as a fact, the City's hiring officials did not know that USERRA barred it from using McLain's service-related unavailability as a negative selection factor, or that state civil service law expressly permitted it to select him notwithstanding that his service obligation made him temporarily unavailable, such lack of knowledge, especially when coupled with a failure to even inquire as to what the laws had to say about this situation, would qualify as just the sort of

reckless disregard for, or indifference to, its legal obligations as to constitute a "willful failure to comply" with USERRA's provisions.[38]

### III.   CONCLUSION AND REQUEST FOR HEARING

For all of the reasons set forth above, the plaintiff submits that he is entitled to judgment in his favor as a matter of law on liability and damages, and requests the issuance of appropriate orders.

Respectfully submitted,

By his attorneys,

*James F. Lamond*
James F. Lamond, BBO #544817
Alan J. McDonald, BBO #330960
McDonald & Associates
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, MA  01772-1834
(508) 485-6600

Dated:  June 10, 2005

### CERTIFICATE OF SERVICE

I, James F. Lamond, hereby certify that I have this day by first-class mail, postage prepaid, served a copy of the foregoing Plaintiff's Motion For Summary Judgment And Statement Of Reasons Why Motion Should Be Allowed upon Matthew J. Buckley, Esq., Office of the City Solicitor, City of Somerville, City Hall, 93 Highland Avenue, Somerville, Massachusetts  02143.

Dated:  June 10, 2005        *James F. Lamond*
                             James F. Lamond

---

[38]   McLain recognizes that willfulness is a fact-intensive issue and that it may not be appropriate for summary resolution.  See, e.g., Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1515-16 (1st Cir. 1991).