ATTACHMENT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
THOMAS McLAIN,                )
          Plaintiff           )
                              )
V.                            )        C.A. No. 04CV 11833 RCL
                              )
CITY OF SOMERVILLE,           )
          Defendant           )
```

Now comes Kathleen DiCiaccio who, with personal knowledge of the matters set forth below, deposes and says as follows:

1.     My name is Kathleen DiCiaccio and I am the Assistant Personnel Director for the City of Somerville, Massachusetts.

2.     From late in 2000 through October 1, 2001, I was involved with administering the hiring of eleven police officers.

3.     I had personal contact with Thomas McLain, an applicant for police officer.

4.     Thomas McLain's name appeared on a list provided by the Human Resources Division of the Massachusetts Civil Service Commission, making him eligible for appointment.

5.     At the time of the application process in 2001, Thomas McLain had made it clear that he was in the U.S. Army and stationed at Fort Lewis in Washington State.

6.     Nevertheless, Mr. McLain was able to attend an interview in Somerville which was conducted in July, 2001.

7.     During the selection process I accommodated Mr. McLain with the granting of extra time to respond to our inquiries due to his service obligations.

8.     Mr. McLain was considered an outstanding candidate. The City was prepared to offer Mr. McLain one of the positions.

9.     The City of Somerville does not conduct its own police academy. Despite the fact that planning for the hiring had been proceeding since the end of 2000, no police academy was scheduled for Somerville by the Massachusetts Criminal Justice Training Council until the one which began on October 1, 2001.

10.     I had a telephone conversation with Mr. McLain some time in August of 2001, after the interviews and background investigations had been conducted. I informed him that he was going to be one of the selected candidates and that the police academy was set to begin on October 1, 2001. Mr. McLain was very disappointed. He said he was sorry but he would not be able to attend because he was still going to be on active duty at that time.

11.     Although I cannot recall the exact dates stated, Mr. McLain also stated at that time that he was eligible for early release but that the soonest date he could be released was several weeks after the academy was to begin.

12.     The police academy date was set by the Massachusetts Criminal Justice Training Council. It was scheduled for the purpose of training officers from other police departments as well as Somerville officers. It was not possible to change the date.

13.     At no time did Mr. McLain request any kind of accommodation. Given the difficulty in setting up a police academy, as well as the serious need for more police officers on the street, it is difficult to imagine how it would have been possible in any event.

14.     The City had no input into the setting of the academy date of October 1, 2001. We were completely subject to the schedule set by the Massachusetts Criminal Justice Training Council.

15.     In my experience it takes several months and often up to a year or more to get officers situated into a training academy after the decision to hire is made.

16.     My contact with Mr. McLain throughout the process was entirely positive. At no time did I exhibit nor did I have any sense that the City had any animus against Mr. McLain's military service. In fact, the reverse was true. It made him a more attractive candidate.

17.     The City of Somerville would have hired Mr. McLain if he could have attended the police academy on October 1, 2001.

Signed under the pains and penalties of perjury this 15th day of June, 2005.

Kathleen DiCiaccio