$\mathcal{K} e s c a n$

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS McLAIN,                )
            Plaintiff          )
                              )
V.                            )        C.A. No. 04CV 11833 RCL
                              )
CITY OF SOMERVILLE,           )
            Defendant          )

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

This is an action brought under the Uniformed Services
Employment and Reemployment Rights Act, 38 USCS § 4301 et.
seq.  (USERRA).  The plaintiff claims that when the
defendant City of Somerville (hereinafter, the City) failed
to hire him as a police officer in August, 2001 that it
discriminated against him in violation of 38 USCS § 4311
(c).  The City's position is that it was prepared to hire
the plaintiff but that it was impossible to do so at that
time due to factors beyond its control.

### II.   STANDARD OF REVIEW

A party is entitled to summary judgment upon motion if
the pleadings, depositions, answers to interrogatories, and
admissions on file , together with affidavits, show there is
no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law.
*Fed.R.Civ.P. 56 (c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317,
322 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Banc One Capital
Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir.

1995); Mere allegations of a factual dispute between the
parties will not defeat an otherwise proper motion for
summary judgment; the requirement is that there be no
genuine issue of material fact. *Anderson v. Liberty Lobby,
Inc.* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202
(1986).

**III. ARGUMENT**

**A. USERRA Distinguishes Between Active Duty Service
Members and Reserve and National Guard Members**

There is virtually no case law that directly or
indirectly addresses the civilian employment of full time
active duty personnel during the period of their service.
The few cases of initial employment, as opposed to
reemployment situations, address reservists. See, e.g.,
*Beattie v. The Trump Shuttle, Inc.*, 758 F. Supp. 30
(D.D.N.Y. 1991). It is clear under the statute, 38 U.S.C.
4301, et seq., that a distinction is made between full time
active duty personnel and reservists. The cases that
address reemployment specifically refer to a return to prior
employment upon the completion of active duty. See, e.g.,
*Lapine v. Town of Wellesley*, 304 F. 3d 90 (1st Cir. 2002).
On the other hand, it is the cases involving reservists and
other part time uniformed service members that address the
provisions under USERRA dealing with discrimination and
initial hire. See, e.g., *Beattie v. The Trump Shuttle,*

*Inc.*, 758 F. Supp. 30 (D.D.N.Y. 1991).  Indeed, there appears to be a logical presumption that those on active duty are otherwise occupied full time in the service of the country and not available for full time civilian employment during that very same period.

While it is clear that, by its passage of USERRA, Congress intended to prevent discrimination against members of the uniformed services in the employment realm, there is nothing to indicate that it intended employers to make initial hires of active duty service members before they complete their tour of duty.  The far-reaching implications of such a determination could be highly disruptive to the civilian work force and, in the matter before the bar, to public safety.

While the plaintiff is to be lauded for his service to the country it was a decision he voluntarily undertook. This is not to suggest that the protections set forth under USERRA don't apply to the plaintiff.  They are simply inapplicable in this context.  When we choose to do certain things in our lives the opportunity cost is always everything else we could be doing at the same time.  By establishing reemployment rights for veterans Congress implicitly recognized that active duty service precludes other full time employment.  That is why reemployment rights inure at the point that the active duty service of the member is completed.  See generally, 38 USCS § 4312. Consider the language in 38 U.S.C.S. § 4313 which states in

3

pertinent part: ``[a] person entitled to reemployment under §4312, *upon completion of a period of service in the armed services*, shall be promptly reemployed in accordance with the following order of priority . . .'' (emphasis supplied).

Reservists and National Guard members, on the other hand, are expected to be part time service members otherwise employed in civilian jobs. Their part time duties require them to be away from the job at sporadic intervals which could create discriminatory behavior on the part of the employer. Addressing that very issue, the court, in *Snowman v. IMCO Recycling, Inc.* 347 F. Supp. 2d 338(2002), stated that ``the statute is to be liberally construed *for the benefit of military reservists and guardsmen*.'' Id, at 342 (emphasis added), quoting, *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S. Ct. 2100, 65 L.Ed.2d 53 (1980); *Cole v. Swint* 961 F.2d 58, 59 (5ᵗʰ Cir. 1992).

The concept that reservists would be granted different protections than returning active duty personnel under USERRA is not a unique theory. In *Carney v. Cummins Engine Company, Inc.* 602 F.2d 763 (1979), the court, stated that ``it is not inconceivable that Congress intended to grant reservists greater protection than veterans returning from active duty.'' Id at 765. While the court was addressing the VRRA, USERRA's predecessor, the analogy still applies. Although the anti-discrimination provisions contained in 38

4

U.S.C.S. § 4311 (c) certainly apply to active duty
personnel, it is implicit throughout, that no expectation
exists that it should apply to an active duty member seeking
full time civilian employment which is to commence during
the period of his full duty service. To the extent that the
provisions apply to active duty personnel during their
period of service it would be in the area of accommodating
interview schedules, etc. To that end, the City of
Somerville extended every courtesy to the plaintiff during
the application process. See, Affidavit of Kathleen
DiCiaccio, Attachment ``A,'' November 1, 2001 letter of
plaintiff, Attachment ``B''.

To follow plaintiff's position to its illogical ends
would require Cities and Towns, already giving well-deserved
hiring preferences to Veterans, to hire active duty
personnel into police positions and then to hold those jobs
for them for up to five years that the service member could
claim it under reemployment rights. See, 38 U.S.C.S.
§12(a)(2).

## B.   **The City Did Not Discriminate Against the Plaintiff Based upon His Membership in the Uniformed Services**

It is a requirement imposed on the City by the state
that every person appointed as a police officer ``shall,
prior to exercising police powers, be assigned to and
satisfactorily complete a prescribed course of study

5

approved by the municipal police training committee.''
M.G.L. c. 41 § 96B.

Clearly then, the failure to select plaintiff for the
position of police officer was not based upon his membership
in the armed forces. Rather, the City is prevented by state
law from hiring anyone until he or she completes academy
training.

The City based its determination to set the hiring date
for October 1, 2001 based upon the schedule set by the
Massachusetts Criminal Justice Training Council and without
regard to plaintiff's membership in the armed forces.
Indeed, the City found the plaintiff to be an outstanding
candidate for the position of police officer and essentially
offered him the position. When told that he would be
selected and that the police academy would begin on October
1, 2001, it was the plaintiff who stated he could not attend
the state-mandated police academy. He was not selected only
after he made it clear that it was not possible for him to
be here. See, Affidavit of Kathleen DiCiaccio, Attachment
``A''.

While it is true that the plaintiff's unavailability
was due to his full time active duty in the military, it
does not follow that it was his membership in the armed
forces that was the motivating factor in the decision not to
hire him at that time. The City of Somerville does not
conduct its own police academy. It is subject to the
schedule set by an independent body, the Massachusetts

Criminal Justice Training Council.  The process entailed in
hiring police officers is often a long and arduous one.  In
the matter before the bar, the City had been engaged in the
process for over a year before being able to send officers
to an academy.  Even on those occasions when the City has
been prepared to hire immediately, it has been forced to
wait for several months for an academy to be conducted.
See, Affidavit of Kathleen DiCiaccio, Attachment ``A''.

> A claimant ``bears the initial burden of showing by a
> preponderance of the evidence that the employee's
> military service was ``a substantial motivating
> factor'' in the adverse employment action.  If this
> requirement is met, the employer has the opportunity to
> come forward with evidence to show, by a preponderance
> of the evidence, that the employer would have taken the
> same adverse action anyway, for a valid reason.''

*Snowman v. IMCO Recycling, Inc.* 347 F.Supp.2d 338, 342
(2004) quoting, *Sheehan v. Dept. of the Navy*, 240 F3d 1009,
1013 (Fed.Cir. 2001); and, *Rogers v. City of San Antonio*, 211
F. Supp. 829, 835 (W.D.Tex. 2002).

In the matter before the bar, it was not simply a
matter of rescheduling the police academy and making other
accommodations.  Rather, what would have been required is
that the City hire one less officer than it determined was
needed as a matter of public safety.  Remember, it was just
prior to the start of this particular police academy that the
country was attacked on September 11, 2001.  The City had no
way of knowing when and if the plaintiff would be completing
his service obligations.  We submit that, at that time, the
plaintiff had no way of knowing either.  In the meanwhile the
City was still left with the responsibility of putting police
officers on the street at a time of seriously heightened

7

alert here at home. The plaintiff can simply come up with no evidence that the City had any other motivation at that time other than to fulfill its public safety responsibilities.

It should be noted that plaintiff here seeks greater protections than those afforded veterans returning to jobs they already held prior to entering active duty. An employer is not required to reemploy a returning veteran if ``the employer's circumstances have so changed as to make such reemployment impossible or unreasonable.'' 38 U.S.C.S. § 12(d)(1)(A). If impossibility or unreasonableness can be the basis for an employer to be relieved of its reemployment requirements for a returning veteran, it certainly can be the basis to relieve an employer from any requirement of initial hire when an active service member cannot come to work or even fulfill the statutory pre-employment requirements of the position, and any possible accommodation would be unreasonable in the circumstances.

## C.    The Plaintiff's Case Fails Due to the Doctrine of Laches

The plaintiff's claims here have come at a time far later than would be afforded to veterans returning to jobs they held prior to entering active duty. Reemployment rights set forth under 38 U.S.C.S. § 4312 require returning veterans to notify their employers ``upon completion of a period of service in the uniformed services . . . [i]n the

8

case of a person whose period of service in the uniformed
services was for more than 180 days, by submitting an
application for reemployment with the employer not later
than 90 days after the completion of the period of
service.'' 38 U.S.C.S. § 12(e)(1)(D).

Despite the fact that no state statute of limitations
is to apply to an action brought under USERRA 38 U.S.C.S.
§4323(i), the doctrine of laches is still applicable. ``In
determining when a plaintiff's suit should be barred . . . ,
courts have consistently used principles of laches as
developed by courts of equity.'' *Tandy Corp. v. Malone &
Hyde, Inc*. 769 F.2d 362, 365 (6th Cir. 1985). The equitable
defense of laches will bar a party from asserting a claim if
the party so unreasonably delayed in bringing the claim that
it caused some injury or prejudice to the defendant.''
*Polaroid Corp. v. The Travelers Indemnity Co*., 414 Mass.
747, 759-760, 610 N.E.2d 912 (1993). The application of the
doctrine is within the sound discretion of the district
court. *Puerto Rican-American Ins. Co. v. Benjamin Shipping
Co., Ltd*., 829 F2d 281, 283 (1st Cir. 1987).

In the matter before bar, the complained of actions
occurred on August 31, 2001. The plaintiff never sought an
accommodation. He never indicated any complaint regarding
the way he was treated. On the contrary, he wrote to a City
administrator thanking her for all she had done for him in

9

his pursuit. See November 1, 2001 letter of plaintiff, Attachment ``B''.

In the time since the complained of action, other candidates that were bypassed filed timely complaints with the Massachusetts Civil Service Commission. A settlement was reached with those individuals placing each at the top of the next four civil service lists. See Affidavit of Francis X. Wright, Attachment ``C''.

The plaintiff's complaint here, coming so late, serves to prejudice the City because it will lead to further litigation and potentially place settled matters back into dispute.

Although no limitation of time is place under USERRA, it is instructive that regulation limits such appeals to the Merit System Protection Board to 180 days, See, *Roberson v. U.S. Postal Service*, 77 M.S.P.R. 569 (1998), citing 5 C.F.R. §1201.22(b)(2)(ii). Given the admonition in USERRA that ``[i]t is the sense of Congress that the Federal Government should be a model employer in carrying out the provisions of this chapter,'' the 180 day limitation serves as a standard.

It should be noted, however, that the 180 limitation is not set in stone. A party may show good cause for the untimely filing of a petition. The Board will consider the length of the delay, the reasonableness of the excuse and his showing of due diligence, whether he is proceeding pro se, etc. See, *Johnson v. Dept. of the Air Force*, 92

10

M.S.P.R. 370, 374 (2002). There the Board found that ``the appellant's pro se status, by itself, does not excuse his significant filing delay of over 20 months.'' Id, at 374, citing, *Greenburg v. Dept. of Justice*, 91 M.S.P.R. 42 (2002) (a six month filing delay is significant); *Arrasmith v. Department of Agriculture*, 89 M.S.P.R. 577 (2001) (pro se status does not excuse a 48 day filing delay.)

In employment discrimination cases relatively short limitations periods are in place. For example, there is a six month period to file a discrimination complaint with the Massachusetts Commission Against Discrimination. M.G.L. c. 151B, § 4. The rationale for such a short period is clearly to allow employers to address such matters on a timely basis without disrupting the workplace and, potentially the rights of other workers.

The matter before the bar was filed on August 26, 2004, nearly three years after the complained of event. The plaintiff can provide no justification for such a delay.

## IV.   CONCLUSION

For all of the above state reasons the defendant states that it is entitled to judgment as a matter of law. In the alternative, defendant requests that the matter be dismissed under the doctrine of laches in the court's sound discretion.

Respectfully submitted
City of Somerville
By its attorney

Matthew J. Buckley
Assistant City Solicitor
City of Somerville
93 Highland Avenue
Somerville, MA  02143
617-625-6600 X4403
BBO# 553390

## CERTIFICATE OF SERVICE

I, Matthew J. Buckley, hereby certify that I have this
day served a copy of the foregoing Defendant's Motion
for Summary Judgment and Memorandum in Support of
Motion for Summary Judgment along with Concise
Statement of Material Facts and all Attachments, by
first class mail, postage prepaid, upon the following:

James F. Lamond
McDonald & Associates
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, MA  01772-1834

Dated: June 15, 2005

Matthew J. Buckley