UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
THOMAS McLAIN,          )
        Plaintiff      )
                        )
V.                      )        C.A. No. 04CV 11833 RCL
                        )
CITY OF SOMERVILLE,    )
        Defendant      )
```

**MEMORANDUM IN SUPPORT OF OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

This is an action brought under the Uniformed Services Employment and Reemployment Rights Act, 38 USCS § 4301 et. seq. (USERRA). The plaintiff claims that when the defendant City of Somerville (hereinafter, the City) failed to hire him as a police officer in August, 2001 that it discriminated against him in violation of 38 USCS § 4311 (c). The City's position is that it was prepared to hire the plaintiff but that it was impossible to do so at that time due to factors beyond its control.

II. **STANDARD OF REVIEW**

A party is entitled to summary judgment upon motion if the pleadings, depositions, answers to interrogatories, and admissions on file , together with affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Banc One Capital*

*Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995); Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. ARGUMENT

**A.    USERRA Distinguishes Between Active Duty Service Members and Reserve and National Guard Members**

Plaintiff relies heavily upon *Beattie v. The Trump Shuttle, Inc.* 758 F. Supp. 30 (D.D.N.Y. 1991) for the proposition that an initial hire falls under USERRA. However, there is virtually no case law that directly or indirectly addresses the civilian employment of full time active duty personnel during the period of their service. In *Beattie* the plaintiff was a reservist. It is clear under the statute, 38 U.S.C. 4301, et seq., that a distinction is made between full time active duty personnel and reservists. The cases that address reemployment specifically refer to a return to prior employment upon the completion of active duty. See, e.g., *Lapine v. Town of Wellesley*, 304 F. 3d 90 (1st Cir. 2002). On the other hand, it is the cases involving reservists and other part time uniformed service members that address the provisions under USERRA dealing

with discrimination and initial hire.  See, e.g., *Beattie*, id.  Indeed, there appears to be a logical presumption that those on active duty are otherwise occupied full time in the service of the country and not available for full time civilian employment during that very same period.

While it is clear that, by its passage of USERRA, Congress intended to prevent discrimination against members of the uniformed services in the employment realm, there is nothing to indicate that it intended employers to make initial hires of active duty service members before they complete their tour of duty.  The far-reaching implications of such a determination could be highly disruptive to the civilian work force and, in the matter before the bar, to public safety.

While the plaintiff is to be lauded for his service to the country it was a decision he voluntarily undertook.  This is not to suggest that the protections set forth under USERRA don't apply to the plaintiff.  They are simply inapplicable in this context.  When we choose to do certain things in our lives the opportunity cost is always everything else we could be doing at the same time.  By establishing reemployment rights for veterans Congress implicitly recognized that active duty service precludes other full time employment.  That is why reemployment rights inure at the point that the active duty service of the member is completed.  See generally, 38 USCS § 4312.  Consider the language in 38 U.S.C.S. § 4313 which states in

3

pertinent part: ``[a] person entitled to reemployment under §4312, *upon completion of a period of service in the armed services*, shall be promptly reemployed in accordance with the following order of priority . . .'' (emphasis supplied).

Reservists and National Guard members, on the other hand, are expected to be part time service members otherwise employed in civilian jobs. Their part time duties require them to be away from the job at sporadic intervals which could create discriminatory behavior on the part of the employer. Addressing that very issue, the court, in *Snowman v. IMCO Recycling, Inc.* 347 F. Supp. 2d 338(2002), stated that ``the statute is to be liberally construed *for the benefit of military reservists and guardsmen*.'' Id, at 342 (emphasis added), quoting, *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S. Ct. 2100, 65 L.Ed.2d 53 (1980); *Cole v. Swint* 961 F.2d 58, 59 (5th Cir. 1992).

The concept that reservists would be granted different protections than returning active duty personnel under USERRA is not a unique theory. In *Carney v. Cummins Engine Company, Inc.* 602 F.2d 763 (1979), the court, stated that ``it is not inconceivable that Congress intended to grant reservists greater protection than veterans returning from active duty.'' Id at 765. While the court was addressing the VRRA, USERRA's predecessor, the analogy still applies. Although the anti-discrimination provisions contained in 38

4

U.S.C.S. § 4311 (c) certainly apply to active duty personnel, it is implicit throughout, that no expectation exists that it should apply to an active duty member seeking full time civilian employment which is to commence during the period of his full duty service. To the extent that the provisions apply to active duty personnel during their period of service it would be in the area of accommodating interview schedules, etc. To that end, the City of Somerville extended every courtesy to the plaintiff during the application process. See, Affidavit of Kathleen DiCiaccio, Attachment ``A,'' November 1, 2001 letter of plaintiff, Attachment ``B''.

To follow plaintiff's position to its illogical ends would require Cities and Towns, already giving well-deserved hiring preferences to Veterans, to hire active duty personnel into police positions and then to hold those jobs for them for up to five years that the service member could claim it under reemployment rights. See, 38 U.S.C.S. §12(a)(2).

B.  **The City Did Not Discriminate Against the Plaintiff Based upon His Membership in the Uniformed Services**

It is a requirement imposed on the City by the state that every person appointed as a police officer ``shall, prior to exercising police powers, be assigned to and satisfactorily complete a prescribed course of study approved by the municipal police training committee.'' M.G.L. c. 41 § 96B.

Clearly then, the failure to select plaintiff for the position of police officer was not based upon his membership in the armed forces. Rather, the City is prevented by state law from hiring anyone until he or she completes academy training.

The City based its determination to set the hiring date for October 1, 2001 based upon the schedule set by the Massachusetts Criminal Justice Training Council and without regard to plaintiff's membership in the armed forces. Indeed, the City found the plaintiff to be an outstanding candidate for the position of police officer and essentially offered him the position. When told that he would be selected and that the police academy would begin on October 1, 2001, it was the plaintiff who stated he could not attend the state-mandated police academy. He was not selected only after he made it clear that it was not possible for him to be here. See, Affidavit of Kathleen DiCiaccio, Attachment ``A''.

While it is true that the plaintiff's unavailability was due to his full time active duty in the military, it does not follow that it was his membership in the armed forces that was the motivating factor in the decision not to hire him at that time. The City of Somerville does not conduct its own police academy. It is subject to the schedule set by an independent body, the Massachusetts Criminal Justice Training Council. The process entailed in hiring police officers is often a long and arduous one. In

the matter before the bar, the City had been engaged in the process for over a year before being able to send officers to an academy. Even on those occasions when the City has been prepared to hire immediately, it has been forced to wait for several months for an academy to be conducted. See, Affidavit of Kathleen DiCiaccio, Attachment ``A''.

> A claimant ``bears the initial burden of showing by a preponderance of the evidence that the employee's military service was ``a substantial motivating factor'' in the adverse employment action. If this requirement is met, the employer has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the same adverse action anyway, for a valid reason.''

*Snowman v. IMCO Recycling, Inc.* 347 F.Supp.2d 338, 342 (2004) quoting, *Sheehan v. Dept. of the Navy*, 240 F3d 1009, 1013 (Fed.Cir. 2001); and, *Rogers v. City of San Antonio*, 211 F. Supp. 829, 835 (W.D.Tex. 2002).

In the matter before the bar, it was not simply a matter of rescheduling the police academy and making other accommodations. Rather, what would have been required is that the City hire one less officer than it determined was needed as a matter of public safety. Remember, it was just prior to the start of this particular police academy that the country was attacked on September 11, 2001. The City had no way of knowing when and if the plaintiff would be completing his service obligations. We submit that, at that time, the plaintiff had no way of knowing either. In the meanwhile the City was still left with the responsibility of putting police officers on the street at a time of seriously heightened alert here at home. The plaintiff can simply come up with no

7

evidence that the City had any other motivation at that time other than to fulfill its public safety responsibilities.

Plaintiff's reliance upon ALM Spec. L. ch. S35 §3 (2004) is misplaced. In the first instance, the law was passed three years after the events under scrutiny in the case before the bar. Secondly, the plaintiff failed to follow the notice requirements upon his completion of service.

It should be noted that plaintiff here seeks greater protections than those afforded veterans returning to jobs they already held prior to entering active duty. An employer is not required to reemploy a returning veteran if ``the employer's circumstances have so changed as to make such reemployment impossible or unreasonable.'' 38 U.S.C.S. § 12(d)(1)(A). If impossibility or unreasonableness can be the basis for an employer to be relieved of its reemployment requirements for a returning veteran, it certainly can be the basis to relieve an employer from any requirement of initial hire when an active service member cannot come to work or even fulfill the statutory pre-employment requirements of the position, and any possible accommodation would be unreasonable in the circumstances.

C.  **The Plaintiff's Case Fails Due to the Doctrine of Laches**

   a.) The plaintiff's unreasonable delay has prejudiced the defendant.

The plaintiff's claims here have come at a time far later than would be afforded to veterans returning to jobs they held prior to entering active duty. Reemployment rights set forth under 38 U.S.C.S. § 4312 require returning veterans to notify their employers ``upon completion of a period of service in the uniformed services . . . [i]n the case of a person whose period of service in the uniformed services was for more than 180 days, by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service.'' 38 U.S.C.S. § 12(e)(1)(D).

Despite the fact that no state statute of limitations is to apply to an action brought under USERRA 38 U.S.C.S. §4323(i), the doctrine of laches is still applicable. ``In determining when a plaintiff's suit should be barred . . . , courts have consistently used principles of laches as developed by courts of equity.'' *Tandy Corp. v. Malone & Hyde, Inc.* 769 F.2d 362, 365 (6th Cir. 1985). The equitable defense of laches will bar a party from asserting a claim if the party so unreasonably delayed in bringing the claim that it caused some injury or prejudice to the defendant.'' *Polaroid Corp. v. The Travelers Indemnity Co.*, 414 Mass. 747, 759-760, 610 N.E.2d 912 (1993). The application of the doctrine is within the sound discretion of the district court. *Puerto Rican-American Ins. Co. v. Benjamin Shipping Co., Ltd.*, 829 F2d 281, 283 (1st Cir. 1987).

In the matter before bar, the complained of actions occurred on August 31, 2001. The plaintiff never sought an accommodation. He never indicated any complaint regarding the way he was treated. On the contrary, he wrote to a City administrator thanking her for all she had done for him in his pursuit. See November 1, 2001 letter of plaintiff, Attachment ``B''.

In the time since the complained of action, other candidates that were bypassed filed timely complaints with the Massachusetts Civil Service Commission. A settlement was reached with those individuals placing each at the top of the next four civil service lists. See Affidavit of Francis X. Wright, Attachment ``C''.

The plaintiff's complaint here, coming so late, serves to prejudice the City because it will lead to further litigation and potentially place settled matters back into dispute. Moreover, the plaintiff's delay has served to prejudice the City's financial ability to resolve the matter before the bar. Plaintiff's demand for three years of back pay serves as an impediment to the City's ability to settle this very case.

Although no limitation of time is place under USERRA, it is instructive that regulation limits such appeals to the Merit System Protection Board to 180 days, See, *Roberson v. U.S. Postal Service*, 77 M.S.P.R. 569 (1998), citing 5 C.F.R. §1201.22(b)(2)(ii). Given the admonition in USERRA that ``[i]t is the sense of Congress that the Federal Government

should be a model employer in carrying out the provisions of this chapter,'' the 180 day limitation serves as a standard.

It should be noted, however, that the 180 limitation is not set in stone.  A party may show good cause for the untimely filing of a petition.  The Board will consider the length of the delay, the reasonableness of the excuse and his showing of due diligence, whether he is proceeding pro se, etc.  See, *Johnson v. Dept. of the Air Force*, 92 M.S.P.R. 370, 374 (2002).  There the Board found that ``the appellant's pro se status, by itself, does not excuse his significant filing delay of over 20 months.''  Id, at 374, citing, *Greenburg v. Dept. of Justice*, 91 M.S.P.R. 42 (2002) (a six month filing delay is significant); *Arrasmith v. Department of Agriculture*, 89 M.S.P.R. 577 (2001) (pro se status does not excuse a 48 day filing delay.)

In employment discrimination cases relatively short limitations periods are in place.  For example, there is a six month period to file a discrimination complaint with the Massachusetts Commission Against Discrimination.  M.G.L. c. 151B, § 4.  The rationale for such a short period is clearly to allow employers to address such matters on a timely basis without disrupting the workplace and, potentially the rights of other workers.

The matter before the bar was filed on August 26, 2004, nearly three years after the complained of event.  The plaintiff can provide no justification for such a delay.

b.  **The doctrine of laches applies to back pay and attorney's fees.**

In the alternative, the doctrine of laches should apply, for all of the above-stated reasons, to any award of back pay and attorney's fees. The defendant would be severely prejudiced if it is required to pay the plaintiff for the years he allowed the matter to sit without making any claim whatever. See, *Local 205, United Electrical, Radio and Machine Workers of America v. General Electric, Co.* 172 F. Supp. 53 (D.C.. Mass. 1959) (applying the doctrine of laches to deny back pay).

IV.  **CONCLUSION**

For all of the above state reasons the defendant states that the plaintiff's Motion for Summary Judgment should be denied and that judgment should enter for the City as a matter of law. In the alternative, defendant requests that the matter be dismissed under the doctrine of laches in the court's sound discretion.

> Respectfully submitted
> City of Somerville
> By its attorney
>
> /s/ Matthew J. Buckley
> Matthew J. Buckley
> Assistant City Solicitor
> City of Somerville
> 93 Highland Avenue
> Somerville, MA 02143
> 617-625-6600 X4403
> BBO# 553390

**CERTIFICATE OF SERVICE**

I, Matthew J. Buckley, hereby certify that I have this day served a copy of the foregoing Defendant's Memorandum in Support of Opposition to Plaintiff's Motion for Summary, by first class mail, postage prepaid, upon the following:

    James F. Lamond
    McDonald & Associates
    Cordaville Office Center
    153 Cordaville Road, Suite 210
    Southborough, MA  01772-1834

Dated: June 24, 2005

Matthew J. Buckley